# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SHYANNE TUBBS,

                Plaintiff,

v.

ASIA LEECH, MARK SANDERS, PETER O'BOCKHORST, ANDREW SCHNELL, DMCPS, MILWAUKEE POLICE DEPARTMENT, MILWAUKEE COUNTY, and WISCONSIN CIRCUIT COURT,

                Defendants.

Case No. 23-CV-1008-JPS

## ORDER

## 1.     INTRODUCTION

On July 28, 2023, pro se Plaintiff Shyanne Tubbs ("Plaintiff") filed a complaint against Defendants Asia Leech ("Leech"), Mark Sanders ("Sanders"), Peter O'Bockhorst ("O'Bockhorst"), Andrew Schnell ("Schnell"), the Division of Milwaukee Child Protective Services (the "DMCPS"), the Milwaukee Police Department ("MPD"), Milwaukee County, and the Wisconsin Circuit Court (collectively, "Defendants"). ECF No. 1. That same day, Plaintiff filed a motion to proceed in forma pauperis. ECF No. 2. That motion, and the screening of Plaintiff's pro se complaint, are now before the Court. For the reasons discussed herein, the Court will defer ruling on the motion for leave to proceed in forma pauperis, will dismiss all but one defendant from the action, and will instruct Plaintiff to file an amended complaint.

## 2. MOTION TO PROCEED IN FORMA PAUPERIS

On the question of indigence, although Plaintiff need not show that she is totally destitute, *Zaun v. Dobbin*, 628 F.2d 990, 992 (7th Cir. 1980), the privilege of proceeding in forma pauperis "is reserved to the many truly impoverished litigants who, within the District Court's sound discretion, would remain without legal remedy if such privilege were not afforded to them," *Brewster v. N. Am. Van Lines, Inc.*, 461 F.2d 649, 651 (7th Cir. 1972).

In her motion, Plaintiff avers that she is unemployed, unmarried, and has three young daughters for whom she provides "[a]ll care." ECF No. 2 at 1. She has no income due to an alleged discriminatory firing and is currently seeking unemployment benefits. *Id*. at 2, 4. She pays $1,600 in monthly expenses and has no savings. *Id.* at 3–4. Her only property of value is her vehicle, worth approximately $8,000. *Id.* The Court is satisfied that Plaintiff is indigent. However, the inquiry does not end there; the Court must also screen the complaint.

## 3. SCREENING

### 3.1 Standards

Notwithstanding the payment of any filing fee, the Court may screen a complaint and dismiss it or any portion thereof if it raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003) ("District judges have ample authority to dismiss frivolous or transparently defective suits spontaneously, and thus save everyone time and legal expense. This is so even when the plaintiff has paid all fees for filing and service . . . ."); *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999) ("[D]istrict courts have the power to screen complaints filed

Case 2:23-cv-01008-JPS   Filed 08/16/23   Page 2 of 17   Document 4

by all litigants . . . regardless of fee status."). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The Court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule "requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." *United States, ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003).

"What is a short and plain statement depends, of course, on the circumstances of the case." *Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383, 1387 (10th Cir. 1980). And "undue length alone" may not necessarily warrant dismissal of an otherwise valid complaint. *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011). But rarely will this Court consider a lengthy pro se complaint "short and plain," unless it is clear and intelligible. *See Parker v. Learn the Skills Corp.*, No. 03-6936, 2004 U.S. Dist. LEXIS 21499, at *5 (E.D. Penn. Oct. 25, 2004) (80-page pro se complaint did not comply with Rule 8); *Struggs v. Pfeiffer*, 2019 U.S. Dist. LEXIS 202582, 2019 WL 6211229, at *1–2 (E.D. Cal. Nov. 21, 2019) (dismissing 42-page complaint as noncompliant with Rule 8). And shorter complaints may still run afoul of the rule if they are rambling, repetitive, or confusing. *Stanard*, 658 F.3d at 798 ("[W]here the lack of organization and basic coherence renders a complaint too confusing to determine the facts that constitute the alleged wrongful conduct, dismissal is an appropriate remedy."). *See also Stanek v.*

*St. Charles Cmty. Unit Sch. Dist. No. 303*, No. 13-CV-3106, 2017 U.S. Dist. LEXIS 198374, at * (26–27 (N.D. Ill. Dec. 1, 2017) ("While a minor amount of surplus material in a complaint is not enough to frustrate Rule 8's goals, unnecessary length coupled with repetitiveness, needless complexity, and immaterial allegations are grounds for dismissal.") (citing *Kadamovas v. Stevens*, 706 F.3d 843, 844 (7th Cir. 2013)).

The complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (internal citation omitted). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81. However, the Court "need not accept as true 'legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678) (internal bracketing omitted).

## 3.2    Plaintiff's Allegations

Plaintiff alleges that she was "denied [her] constitutional right to due process of law" when her children were removed from her custody by "[t]he Division of Milwaukee Child Protective Services with the help of the Milwaukee Police Department" on March 25, 2020. ECF No. 1 at 3.

Plaintiff alleges that a week prior to the removal of her children, on March 18, 2020, she was victimized in a domestic violence dispute by the

father of her children. *Id.* Police were summoned to her home at that time, and Plaintiff cooperated in "fil[ing] a report." *Id.* Two days later, she purports to have received a call from a non-defendant police officer, who informed her "that the District Attorney wanted to have her [three-year-old] child . . . forensically interviewed." *Id.* Plaintiff declined. *Id.*

Several hours later, Plaintiff alleges that she received a call from "DMCPS IAS Asia Leech," who stated "that she needed to speak with [Plaintiff] regarding the [domestic violence dispute]." *Id.* Plaintiff felt "compelled to" speak with Leech, and so she told Leech that she was at her mother's residence and that Leech could speak with her there. *Id.* At Plaintiff's mother's residence, Leech told Plaintiff that Plaintiff "needed to go to court and testify against [her] children's father . . . . to keep [her] kids." *Id.* Plaintiff did not want to testify against the father of her children. *Id.* According to Plaintiff, Leech "repeatedly threatened that she had two car seats in her vehicle, ready to take [Plaintiff's] children away." *Id.* Leech allegedly also told Plaintiff that Plaintiff had to allow her children "to do a forensic interview," which Plaintiff again declined. *Id.* To this, Leech allegedly responded that she could "just remove them from [Plaintiff's] custody." *Id.* Leech then told Plaintiff that if Plaintiff "agreed to a two-week protection plan," Plaintiff "would be able to keep [her] kids." *Id.* Plaintiff agreed and signed the plan, which provided that Plaintiff could "not be left alone with [her] children." *Id.* According to Plaintiff, she "complied" with the plan. *Id.*

Then, on March 25, 2020, Plaintiff, Plaintiff's mother, and Plaintiff's children went to collect some belongings from Plaintiff's primary residence. *Id.* Shortly after they arrived, Plaintiff alleges that Leech arrived and stated that she was going "to take the kids." *Id.* Plaintiff refused and told Leech to

leave. *Id.* at 3–4. Shortly thereafter, three MPD officers arrived, one of whom was Schnell. *Id.* at 4. Plaintiff refused to cooperate and spoke to the officers through the window. *Id.* According to Plaintiff, Schnell then "threatened" to "kick [Plaintiff's] door down" and "automatically evict[]" Plaintiff if she did not come out. *Id.* Schnell also allegedly lied about having a "court order to pick up [the] children." *Id.* Feeling coerced, Plaintiff stepped outside. *Id.*

Once Plaintiff had stepped outside and was "busy conversing" with the officers then present, a "K-9 unit entered [her] home without [her] permission and conducted an illegal search." *Id.* Leech also took Plaintiff's three-year-old and placed her in a vehicle. *Id.* Police forbade Plaintiff from removing the three-year-old from the vehicle. *Id.* Plaintiff alleges that Schnell "ripped [her] [9-month-old] daughter from [her] arms." *Id.* She alleges that officers used "excessive police force" to remove her children. *Id.* at 5.

According to Plaintiff, "a hearing was held for the removal of [Plaintiff's] children" on March 27, 2020. *Id.* Plaintiff alleges that documents were falsified with respect to the removal of her children, although she does not specify by whom. *Id.* She further alleges that "[t]here were several examples of Judicial misconduct" committed by Sanders. *Id.* Specifically, Plaintiff claims she was "silenced" by Sanders when she tried to "speak for [her]self" during the proceeding. *Id.* Plaintiff further alleges that the attorney appointed to represent her in this proceeding, O'Bockhorst, "purposely misrepresented [her] in court" and was "working against [her]." *Id.* "Another Judge that [her] case was assigned to," Plaintiff writes, "was Judge Ellen Brostrom," who allegedly "systematically manipulated [Plaintiff] into not speaking for [her]self . . . ." *Id.*

For her asserted injuries, including the trauma of the experience, Plaintiff seeks to recover damages. *Id.* at 6.

### 3.3 Analysis

There are several issues barring this Court's review of Plaintiff's case. The Court addresses those issues below.

#### 3.3.1 Judicial Immunity

The Court must address potential issues of immunity since Plaintiff accuses Sanders, the judge who allegedly presided over the removal of Plaintiff's children from her custody, of judicial misconduct. Plaintiff also lists as a defendant the "Wisconsin Circuit Court," but her grievances against the Wisconsin Circuit Court and Sanders appear to be one and the same. *See Wilke v. Nation Star Mortg. LLC,* No. 19-cv-11298-pp, 2021 U.S. Dist. LEXIS 17136, at *5 (E.D. Wis. Jan. 29, 2021) ("The plaintiff has sued the 'Marquette County courts.' The court assumes that the plaintiff wishes to sue the judge or judges [who oversaw the proceeding at issue].").

Judges are entitled to absolute immunity when the challenged actions are judicial in nature. *See Brunson v. Murray*, 843 F.3d 698, 710 (7th Cir. 2016). "Absolute immunity is a powerful shield attaching primarily to judicial functions—not to the person or position." *Id.* (citing *Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985))). "A judge has absolute immunity for any judicial actions unless the judge acted in the absence of all jurisdiction." *Polzin v. Gage*, 636 F.3d 834, 838 (7th Cir. 2011) (citing *Loubser v. Thacker*, 440 F.3d 439, 442 (7th Cir. 2006) and *John v. Barron*, 897 F.2d 1387, 1391 (7th Cir. 1990)).

"When a functional analysis of the responsibilities at issue reveals that they are judicial in nature, the actor is entitled to absolute immunity from damages no matter how erroneous the act or injurious the

consequences." *Brunson,* 843 F.3d at 710 (citing *Cleavinger v. Saxner,* 474 U.S. 193, 199–200 (1985))*; see also Bolin v. Story,* 225 F.3d 1234, 1239 (7th Cir. 2020) ("This immunity applies even when the judge's actions are in error, malicious, or in excess of his or her jurisdiction.") (citing *Stump v. Sparkman,* 435 U.S. 349, 356 (1978)). "This immunity applies even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.'" *Pierson v. Ray,* 386 U.S. 547, 554 (1967) (quoting *Scott v. Stansfield,* L.R. 3 Ex. 220, 223 (1868)).

"If the functions are not judicial in nature, however, then absolute immunity is not available." *Brunson,* 843 F.3d at 710. But even then, the official is still left with the protection of qualified immunity. *Id*. (citing *Pearson v. Callahan,* 555 U.S. 223, 231 (2009)).

Plaintiff alleges that Sanders engaged in "judicial misconduct," specifically by silencing her during the relevant proceeding and insisting that Plaintiff allow her appointed attorney to speak for her. Her characterization of the misconduct as "judicial," her allegation that it occurred during the proceeding, and the fact that it appears to have been a means of maintaining decorum, all assure the Court that the alleged misconduct pertained to responsibilities "judicial in nature." *Brunson,* 843 F.3d at 710. Plaintiff's claim against Sanders is therefore barred by the doctrine of absolute judicial immunity. Accordingly, the Court will dismiss both Sanders and the Wisconsin Circuit Court from the action.

### 3.3.2 *Monell*'s Requirements

Plaintiff additionally seeks relief against Milwaukee County, MPD, and the DMCPS, so the Court must address the requirements of *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *Monell* provides that counties, municipalities, and similar municipal entities (such as MPD and the DMCPS) cannot be "held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, . . . a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." 436 U.S. at 690; *see also Snyder v. King*, 745 F.3d 242, 251 (7th Cir. 2014) ("[M]unicipalities and counties qualify as 'persons' for liability under 42 U.S.C. § 1983") (Wood, C.J., concurring) (citing *Monell*, 436 U.S. at 663); *Thomas v. DMCPS*, No. 23-CV-438, 2023 U.S. Dist. LEXIS 84383, at \*6 (E.D. Wis. May 15, 2023) ("[T]he complaint does not allege any policy or custom of the Division of Milwaukee Child Protective Services such that it may be liable under *Monell* . . . .") (citing *generally Monell*, 436 U.S. 658);[1] *Dotson v. Milwaukee Police Dep't Dist. 2*, No. 18-CV-182-JPS, 2018 U.S. Dist. LEXIS 82121, at \*7 (E.D. Wis. May 16, 2018) ("A suit against the police department, as an arm of the City of Milwaukee, is in reality a suit against the city itself" such that *Monell* is applicable).

"[W]hether or not a plaintiff has stated a Section 1983 claim against a municipal entity typically hinges on the extent to which that municipal

---

[1]And even if Plaintiff did successfully allege a violative policy or custom on the part of DMCPS, DMCPS would still be "immune from suit for damages" as "an arm of the State of Wisconsin." *Thomas*, 2023 U.S. Dist. LEXIS 84383, at \*6 (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Driftless Area Land Conservancy v. Valcq*, 16 F. 4th 508, 521 (7th Cir. 2021); and *Tucker v. Williams*, 682 F.3d 654, 659 (7th Cir. 2012)).

Case 2:23-cv-01008-JPS   Filed 08/16/23   Page 9 of 17   Document 4

entity was independently responsible for the allegedly constitutional act." *Snyder*, 745 F.3d at 247. "*Monell* liability is difficult to establish precisely because of the care the law has taken to avoid holding a municipality responsible for an employee's misconduct." *J.K.J. v. Polk County*, 960 F.3d 367, 377 (7th Cir. 2020). "A primary guardrail is the threshold requirement of a plaintiff showing that a municipal policy or custom caused the constitutional injury." *Id.* (citing *Monell*, 436 U.S. at 690–91). But that is not all. "The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (citing *Monell*, 436 U.S. at 694).

Here, Plaintiff makes no allegation that her injuries were caused by a policy or custom of Milwaukee County, MPD, or the DMCPS. *See Snyder*, 745 F.3d at 247 ("The operative complaint in this case is devoid of any remotely specific allegation that a county-level policy or custom caused [plaintiff's] harm."). The only allegation that comes remotely close is Plaintiff's claim that "the system railroads and separates black families when [they] do not cooperate" with police. ECF No. 1 at 4. But this vague assertion is insufficient. *See Methavichit v. Follenweider*, No. 1:20-CV-02841, 2021 U.S. Dist. LEXIS 243062, at *34 (N.D. Ill. Dec. 21, 2021) ("Sweeping assertions that other members of protected groups have 'suffered discrimination' are not enough to support a *Monell* claim."); *Scott v. Buncich*, No. 2:16-CV-114, 2016 U.S. Dist. LEXIS 130122, at *24 (N.D. Ind. Sept. 23, 2016) ("[A] plaintiff asserting a *Monell* claim under § 1983 cannot survive a motion to dismiss when plaintiff's claim 'rests solely on conclusory allegations of a *de facto* municipal policy and fails to allege any well pled facts of any occurrence or policy other than the single incident involving

the plaintiff.'") (citation omitted). Accordingly, the Court is constrained to dismiss Milwaukee County, MPD, and the DMCPS from this action.

### 3.3.3 Claims against Leech

Plaintiff also makes claims against Leech for her role in removing Plaintiff's children from Plaintiff's custody. Specifically, Plaintiff alleges that Leech threatened to remove Plaintiff's children and then ultimately made good on that threat. But these claims, too, are barred. "[S]ocial workers are entitled to absolute prosecutorial immunity when they initiate and aid the adjudication of child protective proceedings." *Cox v. Med. Coll. of Wis. Inc.*, No. 22-CV-553-JPS, 2023 U.S. Dist. LEXIS 7411, at *148–49 (E.D. Wis. Jan. 17, 2023) (quoting *Loertscher v. Anderson*, No. 14-cv-870-jdp, 2016 U.S. Dist. LEXIS 73548, at *12 (W.D. Wis. June 6, 2016)); *see also Brokaw v. Mercer County*, 235 F.3d 1000, 1023 (7th Cir. 2000) ("[S]ocial workers and other state actors who cause a child's removal are entitled to qualified immunity because the alleged constitutional violation will rarely—if ever—be clearly established") (collecting cases); *Millspaugh v. Cnty. Dep't of Pub. Welfare*, 937 F.2d 1172, 1176 (7th Cir. 1991) ("[S]ocial workers must settle for qualified immunity [as opposed to absolute immunity] when taking initial custody of children.") (collecting cases). Therefore, the Court will dismiss Leech from the action.

### 3.3.4 Claims against O'Bockhorst

Plaintiff additionally alleges that O'Bockhorst, as her appointed lawyer in the child removal proceedings, misrepresented her interests and was working against her. But "a court-appointed public defender is not a state actor, and thus cannot be sued under 42 U.S.C. § 1983." *McDonald v. White*, 465 F. App'x 544, 548 (7th Cir. 2012) (citing *Polk County v. Dodson*, 454 U.S. 312, 325 (1981)). Furthermore, Plaintiff's allegations against

O'Bockhorst are vague and generalized and accordingly fail to meet Rule 8's pleading standards. Accordingly, the Court will dismiss O'Bockhorst from the action.

### 3.3.5   Claims Against Schnell

That leaves the Court to discuss the claims asserted against Schnell.[2] To reiterate, Plaintiff alleges that Schnell utilized excessive force in removing her children from her custody.[3] ECF No. 1 at 5 ("This is definitely a case of excessive police force."). Specifically, Plaintiff alleges that Schnell used a "very aggressive" tone with her, threatened to kick down her door, and then "ripped [her] daughter from [her] arms with no sympathy." *Id.* at 4.

"Although police officers may use force to seize another person under appropriate circumstances, the Fourth Amendment protects against the use of excessive force." *Taylor v. City of Milford*, 10 F.4th 800, 806 (7th Cir. 2021) (citing *Weinmann v. McClone*, 787 F.3d 444, 448 (7th Cir. 2015)). "The question whether a particular use of force has crossed the constitutional line is governed by the Fourth Amendment, which prohibits unreasonable seizures." *Weinmann*, 787 F.3d at 448 (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Excessive force claims are analyzed "under an 'objective reasonableness' standard." *Graham*, 490 U.S. at 388.

---

[2]Plaintiff also appears to make general allegations as to other unnamed police officers, however she has not named them as Defendants in this action, nor has she listed them as John Doe defendants.

[3]Plaintiff also mentions an alleged illegal search of her home, but she does not attribute that search specifically to Schnell, or to anyone in particular for that matter. She alleges that a K-9 unit entered her home without her permission, but she does not allege that this search was initiated by Schnell.

"[A] claim ordinarily cannot be predicated upon a de minimis use of physical force." *DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000) (citing *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992)) ("[The] simple act of shoving [the plaintiff] qualifies as the kind of de minimis use of force that does not constitute [a constitutional violation] . . . . The shove was a single and isolated act, unaccompanied by further uses of force."). Further, "verbal taunting and threats are usually insufficient to state claims for excessive force." *Harrison v. Wexford Health Sources*, No. 1:17-cv-01383-JBM, 2018 U.S. Dist. LEXIS 16375, at *18 (C.D. Ill. Feb. 1, 2018) (citing *DeWalt*, 224 F.3d at 612 and *Harris v. Harrington*, No. 13-893, 2013 U.S. Dist. LEXIS 142378, at *2 (S.D. Ill. Oct. 2, 2013)). An officer's use of an "aggressive tone," ECF No. 1 at 4, does not "make out a plausible claim of excessive force." *Mannix v. Humer*, No. 10-C-5063, 2011 U.S. Dist. LEXIS 3468, at *8–9 (N.D. Ill. Jan. 11, 2011) (citing *Graham*, 490 U.S. at 394 and *Cuautle v. Tone*, 851 F. Supp. 1236, 1241 (N.D. Ill. 1994)) (dismissing excessive force claim for failure to state a claim where plaintiff "d[id] not allege that . . . police officers physically abused her, [but] [r]ather . . . allege[d] that the officers spoke harshly to her"). Accordingly, Plaintiff's allegations that Schnell used an aggressive tone with her, threatened to kick down the door, and removed Plaintiff's daughter from Plaintiff's arms would seem to be, even when considered jointly, insufficient to support a claim of excessive force.

Furthermore, to the extent that Plaintiff alleges that Schnell "ripped [her] daughter from [her] arms," ECF No. 1 at 4, it is not clear if she alleges that he employed excessive force against herself or against her child. She does not allege that either herself or her daughter were hit, scratched, or otherwise physically harmed in the interaction.

If Plaintiff intends to bring a claim of excessive force against Schnell on her daughter's behalf on a pro se basis, she cannot do so. "[A] next friend may not, without the assistance of counsel, bring suit on behalf of a minor party." *Elustra v. Mineo*, 595 F.3d 699, 705 (7th Cir. 2010) (citing *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) ("[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child.")) and *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986) (*per curiam*) ("Under Fed. R. Civ. P. 17(c) and 28 U.S.C. § 1654, a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney.")). While there are "some exceptions [to this general rule] for particular kinds of proceedings," there appears to be "no comparable exception . . . recognized for a lawsuit based on § 1983 or general state tort law." *Id*. Accordingly, if Plaintiff intends to bring an excessive force claim against Schnell on her daughter's behalf, she is required to do so through an attorney. Even then, however, Plaintiff's allegations as currently pleaded almost certainly fail to rise to the level required to state a claim for excessive force.

While the Court is highly skeptical as to whether Plaintiff will be able to amend her allegations against Schnell to sufficiently state an excessive force claim, the Court will allow her one opportunity to do so. Plaintiff has thirty days from the entry of this Order to 1) submit an amended complaint providing further detail as to the force allegedly used by Schnell; and 2) acquire counsel, if Plaintiff intends to bring this claim on her child's behalf (i.e., if Plaintiff believes the alleged excessive force Schnell used was against her child as opposed to herself personally). In submitting an amended complaint, Plaintiff should omit allegations and claims against the individuals the Court has herein dismissed as defendants from the

action. Failure to appropriately and timely submit an amended complaint as ordered herein will result in dismissal of the action for failure to prosecute.

**4.     CONCLUSION**

In light of the deficiencies in Plaintiff's complaint, the Court will defer ruling on Plaintiff's motion to proceed in forma pauperis and will afford Plaintiff an opportunity to submit an amended complaint.

For the reasons discussed herein, Plaintiff may not proceed against Defendants Leech, DMCPS, MPD, Milwaukee County, O'Bockhorst, Sanders, and the Wisconsin Circuit Court. To the extent that Plaintiff intends to maintain an excessive force claim against Schnell, she must submit an amended complaint as instructed herein, elaborating on that claim, and, if she intends to bring said claim on her child's behalf, she must acquire an attorney to do so. If Plaintiff elects to file an amended complaint, it will become the operative complaint in this action, and the Court will screen it in accordance with 28 U.S.C. § 1915.

The Court will also note that, although it is not entirely clear, if Plaintiff seeks to challenge the underlying removal of her children from her custody, she may not do so here. *Wilke*, 2021 U.S. Dist. LEXIS 17136, at *6 (quoting *Mains v. Citibank, N.A.*, 852 F.3d 669, 675 (7th Cir. 2017)) (noting that *Rooker-Feldman* doctrine bars federal district courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before proceedings commented in the federal district court).

The Court is enclosing a copy of its amended complaint form. Plaintiff should not make any further attempts to list as defendants any of those individuals or entities that the Court has already disallowed Plaintiff

from proceeding against in this action. Moving forward, Plaintiff will not be allowed to add and retract in piecemeal style components to her complaint. *See Brown v. Uhl*, No. 22-CV-131-JPS, 2022 U.S. Dist. LEXIS 136801, at * 3 (E.D. Wis. Aug. 2, 2022) (citing *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 775–76 (7th Cir. 1994)) ("Complaints may not be amended in a piecemeal fashion; the proposed amended complaint must be complete and set forth all claims against all defendants in one document."). If an amended complaint is received, it will become the operative complaint in this action, and the Court will screen it in accordance with 28 U.S.C. § 1915.

Accordingly,

**IT IS FURTHER ORDERED** that Mark Sanders, the Milwaukee Police Department, Milwaukee County, Asia Leech, Peter O'Bockhorst, the Wisconsin Circuit Court, and the DMCPS be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that Plaintiff may **FILE** an amended complaint within **thirty (30) days** of the entry of this Order to address the deficiencies herein discussed as to Plaintiff's excessive force claim. Should Plaintiff fail to do so, her action will be dismissed for failure to prosecute; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the amended complaint form along with this Order.

Dated at Milwaukee, Wisconsin, this 16th day of August, 2023.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge

Plaintiff will be required to submit all correspondence and legal material to:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.